VI–CONCRETE COMPANY, APPELLANT, v. STATE OF NEW
JERSEY, DEPARTMENT OF ENVIRONMENTAL
PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted June 3, 1987—Decided August 17, 1987.

Before Judges KING, DEIGHAN and HARVEY.

*Maressa, Goldstein, Birsner, Patterson & Drinkwater,* attorneys for appellant (*David C. Patterson,* on the brief and reply letter brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*Michael R. Clancy,* Deputy Attorney General, of counsel; *A. Colleen Malloy,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

DEIGHAN, J.A.D.

Plaintiff VI–Concrete Company (VI–Concrete) appeals from the issuance of a New Jersey Pollutant Discharge Elimination System (NJPDES) permit by the Department of Environmental Protection (DEP) without an application having been made for it. The permit required, as a condition thereof, the installation of ground water wells on a site at Columbia Avenue, Atco, in Waterford Township upon which a landfill previously existed. VI–Concrete requested an adjudicatory hearing and the matter was referred by the DEP to the Office of Administrative Law for a hearing.

Since VI–Concrete never applied for the permit in the first instance, it made a motion to invalidate the permit issued by the DEP. DEP filed a cross-motion for summary judgment. The Administrative Law Judge (ALJ) denied both motions on the basis that there were factual issues to be resolved. On the DEP's interlocutory appeal, the Commissioner of the DEP (Commissioner) affirmed the denial of VI–Concrete's motion but reversed the order of the ALJ and granted the DEP's cross-motion for summary judgment.

The facts developed at the hearing are uncomplicated. The DEP issued an NJPDES permit to VI–Concrete on property owned by it on Columbus Avenue in Atco without any application having been made for the permit. The location of the

landfill refers to "Edgewood Sand & Gravel SLF [Sanitary Landfill]" upon which a landfill operation had previously been conducted. The permit required VI–Concrete

> to monitor the ground water at a sanitary landfill in Atco by operating and maintaining four ground water monitoring wells according to the specific and general conditions of this Initial Interim NJPDES permit. The initial Interim NJPDES permit is intended to establish an adequate ground water monitoring program at the above named facility.

Since VI–Concrete never operated a landfill on the property it contends that the DEP could not issue a permit for which an owner had not applied.

At the hearing before the ALJ the following facts were undisputed:

> Petitioner is in the business of producing concrete and concrete by-products. In 1976, it purchased the property in question, a 9.54 acre parcel in Waterford Township, Camden County from Edgewood Bituminous Products & Contractors, Inc. When petitioner [VI–Concrete] bought the property, it contained an existing asphalt plant and related equipment. Sometime in the 1960's the property had been used as a sanitary landfill and operated under the name Edgewood Sand and Gravel Sanitary Landfill.

Although the DEP contested VI–Concrete's other assertions, it accepted the following as true for purposes of the summary judgment motion: (1) the landfill was closed in or about 1968; (2) at the time VI–Concrete purchased the property in 1976 it had no indication that a landfill had ever existed on the property; (3) the agreement of sale for the property to VI–Concrete from Edgewood Bituminous Products & Contractors, Inc. stated the property was zoned for an asphalt plant and that an asphalt plant actually existed; (4) no liens, judgments, encumbrances, actions or proceedings were pending against the seller with regard to the sale of the property; (5) VI–Concrete had never operated a landfill at the site, and (6) that there were no outstanding citations against any party for operation of a landfill from the time operation ceased in 1968 through 1985.

In denying both motions for summary judgment, the ALJ concluded that the DEP could unilaterally issue a permit without an application by VI–Concrete, and that a closed landfill could be subject to regulations. He denied VI–Concrete's mo-

tion for summary judgment because disputed facts existed as to when the landfill closed and the extent to which VI–Concrete knew or should have known about prior use. The ALJ also denied the DEP's motion for summary judgment because he concluded that it could not require monitoring of a preexisting inactive landfill without a showing of environmental damage in the absence of more specific regulations. The ALJ concluded that the regulations upon which the DEP had relied, *N.J.A.C.* 7:14A–10.1, dealt only with new or existing active landfills.

On appeal by DEP, the Commissioner affirmed that portion of the ALJ's decision which held the DEP could unilaterally issue an NJPDES permit without an application and that VI–Concrete as the owner of the property on which a landfill had existed was the proper party to receive the permit. The Commissioner reversed that portion of the ALJ's decision which had held the DEP could not, in the absence of more specific regulations, require monitoring of a preexisting inactive landfill where there was no showing of environmental damage. The Commissioner concluded that "the Water Pollution Control Act authorizes and, in fact, requires the Department to issue NJPDES permits to all classes of landfills regardless of evidence of discharge because it is clearly and directly inferable from the text of the act that all landfills are discharges and that, in the absence of specific exemptions all landfills require NJPDES permits."

On appeal, VI–Concrete contends that the issuance of a NJPDES permit to it was improper and has no basis in fact or law. It further requests that the matter be remanded to adduce additional evidence required for a disposition in this matter.

## I

VI–Concrete contends that the Commissioner's decision must be reversed for three reasons. First it contends that the Water Pollution Control Act, *N.J.S.A.* 58:10A–1 *et seq.* and *N.J.A.C.*

7:14–1 *et seq.*, which the DEP cites as authorities for the issuance of the permit, do not specifically provide that a permit may be issued unilaterally by the DEP without an application. Second, it contends that the statute and regulation apply to existing active landfills, but not preexisting landfills which are now closed and no longer in operation. Finally, VI–Concrete contends that if a permit may be issued for the property in question, it is not the proper permittee, but that its predecessor in title, Edgewood Bituminous Products, who would have operated the landfill, should be the permittee.

■ As to VI–Concrete's first contention, the Water Pollution Control Act provides for a system of monitoring and controlling discharged pollutants which may percolate into waters of the State. "[T]he water quality standards and permit programs adopted pursuant [to the Water Pollution Control Act] are to insure that water pollution will not worsen." *New Jersey Builders v. Dept. of Environmental Protection*, 169 *N.J.Super.* 76, 83 (App.Div.), certif. denied 81 *N.J.* 402 (1979). To accept VI–Concrete's contention that the DEP may not issue a permit without an application would mean that contamination of the water supply from a particular source could not be controlled. The Act provides: "It shall be unlawful for any person to discharge any pollutant, except in conformance with a valid [NJPDES] permit that has been issued by the Commissioner pursuant to this act or a valid National Pollution Discharge Elimination System permit issued by the Administrator pursuant to the federal act, as the case may be." *N.J.S.A.* 58:10A–6a.

If VI–Concrete property pollutes the water, in the absence of a permit, it would be violating the Act and subject to penalties under the Act.

Next, VI–Concrete asserts that the landfill is not subject to the provisions of the Act because the landfill is no longer operating and no specific discharge has been identified as

emanating from the property. The act defines pollutant as follows:

"Pollutant" means any dredged spoil, solid waste, incinerator residue, sewage, garbage, refuse, oil, grease, sewage sludge, munitions, chemical waste, biological materials, radioactive substance, thermal waste, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal or agricultural waster or other residue discharged into the waters of the State. [N.J.S.A. 58:10A–3n]

Although the act does not specifically cite landfills as subject to its regulations, it does so by implication. An administrative agency's expressed authority is augmented by such incidental authority as may be reasonably necessary or appropriate to effectuate the expressly delegated authority. *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562 (1978); *accord, In Re Solid Waste Util. Trust. C. Lists*, 106 *N.J.* 508, 516 (1987). As the DEP points out, the Commissioner is permitted to exempt specific categories of discharge from the requirement of obtaining NJPDES permits. *N.J.S.A.* 58:10A–6d. One such category include a person who "[d]ischarges from septic tanks or other individual waster disposal systems, *sanitary landfills,* and other means of land disposal of waste ..." *N.J.S.A.* 58:10A–6d(3) (emphasis supplied). The Commissioner has not adopted any regulations exempting the landfill operators from the requirement of a permit. Consequently, in the absence of such regulation, it is implicit that landfills are subject to the act.

Petitioner further contends that it is not a discharger. However, discharge is defined as:

The releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of a pollutant into the waters of the State or onto land or into wells *from which it might flow or drain into said waters,* and shall include the release of any pollutants into a municipal treatment works. [*N.J.S.A.* 58:10A–3e; emphasis supplied]

The Act aims to insure that the water quality standards will not retrogress. Consequently, VI–Concrete's landfill, which could contaminate the State's waters, is subject to regulation notwithstanding the fact that it is not presently operating a landfill.

The central issue here is whether VI–Concrete, as the owner of a previously existing landfill, is the proper party to be required to undergo the expense of the ground water monitoring system. DEP contends that VI–Concrete, as the owner in control of the premises, is the most proper and effective party to comply with the conditions of the permit. DEP argues that VI–Concrete may pursue its "damages" in having to monitor the ground water against its predecessors in title. *See State, Dept. of Environ. Protect. v. Ventron Corp.* 94 *N.J.* 473, 503 (1983). Moreover, as the DEP points out, this rationale is consistent with other legislative schemes governing environmental pollution.

Under the Environmental Cleanup Responsibility Act (ECRA), *N.J.S.A.* 13:1K–6 *et seq.*, responsibility for cleanup of properties is on the present owner. A transfer of property which triggers ECRA imposes a regulatory obligation upon the current owner without regard to responsibility for the contamination itself. Any recourse by the current owner against other responsible parties must be by an action separate from the ECRA proceedings. *Superior Air Products Co. v. NL Industries,* 216 *N.J.Super.* 46 (App.Div.1987).

This rationale is also consistent with the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 *et seq.* which provides that "[e]very owner or operator of a sanitary landfill facility shall be jointly and severally liable for the proper operation and closure of the facility as required by law ..." *N.J.S.A.* 13:1E–103. "Closure" means "all activities and costs associated with the design, purchase, construction or maintenance of all measures required by the Department, pursuant to law in order to prevent, minimize or monitor pollution ... resulting from sanitary landfill facilities subsequent to the termination of operations ... including ... the costs of ... leachate monitoring wells." *N.J.S.A.* 13:1E–102a. The definition of owner pursuant to the Act means "[e]very owner of record of any interest in land whereon a sanitary landfill facility is or *has been located* ..." *N.J.S.A.* 13:1E–102b (emphasis supplied). Since VI–Concrete is

the owner of property where a landfill has been located it may be required to conduct ground water monitoring. Notwithstanding the fact that the landfill has been closed, leachate and other pollutants may nonetheless be percolating into the ground water.

■ VI–Concrete raises two final points in regard to this issue. First, it notes that DEP has failed to subject neighboring non-operative landfills to ground water monitoring permits and contends that this constitutes a violation of its due process and equal protection rights. However, VI–Concrete has failed to show that the issuance of the permit to it and excluding others was due to any invidious or arbitrary classification. In our view, the DEP's failure to act immediately with regard to all neighboring landfills which may exist does not invoke VI–Concrete's due process or equal protection rights. "The mere fact that a law has not been fully enforced against others does not give defendant the right to violate it." *State v. Boncelet,* 107 *N.J.Super.* 444, 453 (App.Div.1969).

■ Finally VI–Concrete contends the DEP's issuance of the permit constitutes rulemaking which must be adopted pursuant to the provisions of the Administrative Procedure Act. The Commissioner points out that the Act requires him to issue NJPDES permits to all classes of landfills. Since the Commissioner is merely requiring compliance with the Act by the issuance of the permit, it does not constitute rulemaking and no other regulations need be promulgated.

## II

■ The NJPDES permit issued does not identify the property by block and lot number. VI–Concrete contends that the case was tried on the basis that it involved Lot 4, Block 244 in Waterford Township. On appeal, for the first time, VI–Concrete notes the documents submitted by the DEP, in opposition to its motion for summary judgment, refer to a landfill on property located on Lot 3, Block 244 in Waterford Township. VI–Concrete, therefore, contends that the matter must be re-

manded and the permit issued to the parties who own Lot 3. VI–Concrete's motion to supplement the record regarding ownership of the property was denied by this court. VI–Concrete admits that "this fact was not presented in the Summary Judgment argument below," but argues that "it is clearly evidence that must be considered at this point in time."

In its reply brief, VI–Concrete asserts that "[t]he case has been tried from its inception based on property identified as Block 244, Lot 4, in the Township of Waterford which was purchased from Edgewood Bituminous Products and Contractors, Inc., on March 30, 1976 by Charles DeSorte, Jr., Joseph DeSorte and Donald DeSorte, a partnership t/a DeSorte Enterprises." VI–Concrete refers to Exhibit "B" which was filed by the DEP identifying the property in questions as a landfill owned by Edgewood Sand and Gravel Sanitary Landfill and further identified as Block 244, Lot *3* in Waterford Township. The officers of that corporation were Albert J., Frank G., and Frank G. (sic) Pangia. In its initial brief, VI–Concrete states that although it has been "indicated that a landfill may have existed on its premises," from a review of the records submitted by DEP, "it is referring to the adjoining Lot 3, and not Lot 4 owned by VI–Concrete."

VI–Concrete then points out that "[i]t has been determined that Lot 3 was conveyed to Charles DeSorte, Jr., Joseph DeSorte and Donald DeSorte, a partnership t/a DeSorte Enterprises, on February 9, 1978 by Frank T. Pangia and Martha E. Pangia, his wife." VI–Concrete then points out that "Lot 3 apparently was not owned by Edgewood Sand and Sanitary Landfill, but by Frank and Martha Pangia. Moreover, Lot 4 was the property owned by Edgewood Bituminus Products and Contractors, Inc." It then concludes that from the exhibit presented by DEP, "Lot 4 was the only parcel of ground at issue."

In addition to the fact that this issue was not raised before the ALJ, the NJPDES permit issued to VI–Concrete does not cite any particular lot or block number but simply refers to

VI–Concrete Property by its address on Columbia Avenue in a diagram showing the location of the landfill on that property. VI–Concrete never challenged the description of the landfill in the permit and used the permit as an exhibit in support of its motion to dismiss. It appears that DeSorte Enterprises at one time owned both Lots 3 and 4 and presumably conveyed Lot 4 to VI–Concrete.

In its brief to the ALJ, VI–Concrete admitted that its land had been previously utilized as a landfill by Edgewood Sand and Gravel Sanitary Landfill:

> It appears the asphalt plant was built on the premises in 1970. Thereafter, the property was utilized as an asphalt plant until the purchase by Petitioner in 1976. It also appears that prior to being an asphalt plant, the land had been used in the 1960's as a sanitary landfill. The landfill was owned and operated by Albert, Victor and Frank Pangia in the name of Edgewood Sand and Gravel Sanitary Landfill.

The DEP responds by stating that if VI–Concrete had challenged the description of the landfill as contained in the permit, it "would have demonstrated by documentary evidence that the DeSorte partnership owned both Lots 3 and 4 of Block 244 and that the landfill operations were conducted on both lots."

Be that as it may, the NJPDES permit does not specify the lot and block number of the sanitary landfill but merely refers to Columbia Avenue. While the DEP insists that there is the same identity of ownership or control as to both Lots 3 and 4 of Block 244, the only documentary evidence before us indicates is that VI–Concrete owns Lot 3 and that Lot 4 is owned by the DeSorte partnership. The site location for the Edgewood Sand & Gravel Sanitary Landfill is indicated on a map with a scale of 1″ equal to 2,000 feet. However, the contended site location is merely sketched in with no indication whatsoever as to the precise situs of the landfill. Attachment 1 to the 16–page general conditions for all NJPDES discharge permits again is a sketch, specifically delineated "not to scale", which shows a circle with a landfill perimeter for 13 acres showing the location of four proposed monitoring wells. Again it is not discernible from that sketch as to the identity of the location of the landfill.

In our view VI–Concrete was never advised precisely as to the situs of the former landfill but rather assumed, from information given to it, that there was a previous sanitary landfill on the situs of the asphalt plant which was purchased from the DeSorte partnership. However, there is no indication from the sketches attached to the general conditions for all NJPDES discharge permits as to the ownership of the lands for the proposed monitor wells, all of which are outside the circle sketch of the 13–acre landfill perimeter. If, as contended by the DEP, it "would have demonstrated by documentary evidence that the DeSorte partnership owns both Lots 3 and 4 of Block 244 and that the landfill operations were conducted on both lots," it is difficult to understand why it would issue a permit to VI–Concrete instead of the DeSorte partnership.

The determination by the Commissioner that he has the power and authority to issue an NJPDES permit for installation of monitoring wells for prior or preexisting sanitary landfills without application having been made by the present owner is affirmed. The matter is remanded to the Commissioner for a determination as to the precise location of the Edgewood Sand & Gravel Sanitary Landfill and the identity of the present owner or owners of the landfill. We do not retain jurisdiction.