225 N.J. Super. 212 (1988)
542 A.2d 25
IN THE MATTER OF VULCAN MATERIALS COMPANY, ECRA CASE # 84379.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1988.
Decided May 24, 1988.
*214 Before Judges J.H. COLEMAN, O'BRIEN and HAVEY.
David L. Menzel argued the cause for appellant (Stryker, Tams & Dill, attorneys; Michael Dore and Martha N. Donovan on the brief).
Paul H. Schneider, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Paul H. Schneider on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The novel issue raised in these appeals is whether Vulcan Materials Company (Vulcan), the operator of a detinning plant that was built over a closed solid waste landfill, has any cleanup liability at the time of closure under either the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 et seq. or the Solid Waste Management Act (SWMA), N.J.S.A. 13:1E-1 et seq. The Department of Environmental Protection (DEP) ultimately concluded that Vulcan is responsible for surficial cleanup pursuant to ECRA. We now affirm that determination.
The facts are unique. Until the early 1960's the City of Elizabeth operated a 150 acre municipal landfill in that city. The city sequentially closed and covered sections of the landfill with materials not revealed by the record. Subsequent to the closure and covering, the city sold portions of the former landfill for commercial development. In the early 1960's, 13 acres of this land were purchased by the American Can Company (American) which constructed a detinning plant on the site in 1962. A detinning plant is a tin recovery facility which uses caustics, nitrates, water and heat to separate tin from tin-bearing steel. The end product is tin salt (sodium stannate).
*215 American apparently operated the detinning plant until August 1977 when it transferred ownership to MRI Corporation (MRI), a wholly-owned subsidiary of American. MRI operated the detinning plant until 1981 when it leased the land and sold the improvements on the 13 acre site to Vulcan. In 1982 MRI conveyed title to the land to Tinco, Incorporated which later changed its name to Tinmet Corporation. Tinmet is also a wholly-owned subsidiary of American. Vulcan operated the detinning plant until November 27, 1984 when it decided to close the plant because it was unprofitable. Vulcan may not have closed the plant, however, until March 1985. Consequently, Vulcan owns a deactivated detinning plant situated on 13 acres of land which it occupies under a long term lease.
When Vulcan decided to close the plant, it submitted a General Information Submission Statement to the DEP on November 9, 1984 as required by ECRA, N.J.S.A. 13:1K-9a(1). This was the operator's initial notice of closure. On November 26, 1984, following review of the statement, the DEP notified Vulcan that more information was needed. Vulcan supplemented its statement shortly thereafter with additional information. On January 9, 1985 Vulcan submitted a Site Evaluation Submission statement to the DEP, as required by N.J.S.A. 13:1K-9a(2). Later, on March 14, 1985, representatives from the DEP inspected the plant site to determine the extent of possible contamination. Following this inspection, the DEP representatives prepared a report that detailed the results of their visual examination of the site. In a letter dated April 8, 1985 Vulcan provided the DEP with further documentation concerning past and present environmental conditions at the site.
On May 31, 1985, the DEP sent a letter to Vulcan advising it that because the plant site was located above a former municipal landfill, Vulcan would have to conform its ECRA cleanup plan to the landfill closure requirements of the SWMA. By this letter, the DEP sought to hold Vulcan responsible for any contamination present in the underlying landfill as well as for any contaminants present at or near the plant site's surface. *216 In response, on June 12, 1985 Vulcan protested that the DEP's position was without a legal basis and requested a formal meeting to discuss the matter. Much correspondence flowed between the parties over the following months but nothing was resolved.
The DEP failed to respond by May 16, 1986 to Vulcan's request for a final agency decision concerning the scope of its cleanup responsibility. As a result, on May 29, 1986 Vulcan filed a verified complaint in lieu of prerogative writs to compel the DEP to issue a final decision. On August 14, 1986 the DEP issued its final decision which modified substantially its position set forth in its May 31, 1985 letter. The final decision stated that the landfill exception to the definition of "industrial establishment" contained in ECRA, N.J.S.A. 13:1K-8(f), applied only to those landfills that had approved DEP closure plans pursuant to the SWMA. Because the landfill underlying Vulcan's plant site did not have an approved DEP cleanup plan, the ECRA exception did not apply. The DEP concluded that Vulcan "is responsible for the cleanup of the landfill on which its operation is located under the ECRA.... Vulcan Materials Company is one of may [sic] potentially responsible parties that would be required to participate in the overall cleanup of the site." Because an extensive site investigation had to be performed before a final cleanup order could be entered, the DEP stated that Vulcan could do an initial surface cleanup while deferring the ECRA cleanup of the underlying landfill. Upon receipt of the August 14 final agency decision, Vulcan withdrew its complaint in lieu of prerogative writs. Vulcan filed a notice of appeal from the August 14, 1986 agency decision and that appeal was assigned A-473-86T7.
After the notice of appeal in A-473-86T7 had been filed, the DEP modified its decision again based on legal advice from the Attorney General. Consequently, on July 14, 1987 the DEP issued a modified final decision in which it concluded that any landfill subject to the closure requirements of the SWMA  like the City of Elizabeth's former landfill  was not an "industrial *217 establishment" under the ECRA. Consistent with that conclusion, the DEP stated that the underlying landfill at the Vulcan plant site was outside the scope of any ECRA cleanup responsibility by Vulcan. Accordingly, the DEP expressly adopted Vulcan's position in the matter and stated that Vulcan's required cleanup responsibility under the ECRA would be confined to the plant site above the landfill. The revised decision held Vulcan responsible for surficial cleanup of contamination associated with the detinning operation. The DEP concluded that Vulcan has no cleanup responsibility under the SWMA. As in the August 14, 1986 decision, the exact nature of the surficial cleanup is yet to be determined through ongoing administrative proceedings.
Vulcan has appealed the July 14, 1987 decision which has been assigned A-6188-86T7. The appeals have been consolidated for disposition. Both appeals, however, are interlocutory because the DEP has not entered a final order. R. 2:2-3(b). We now grant leave to appeal nunc pro tunc in the interest of justice in order to lessen the economic impact upon Vulcan.
Vulcan argues in these appeals that it has no surficial or subsurficial cleanup responsibility. Because Vulcan's plant is located on the surface of a former municipal solid waste landfill, Vulcan contends that it is not an "industrial establishment" within the purview of the ECRA. We reject this contention.
The ECRA was enacted in 1983, L. 1983, c. 330, pursuant to a legislative finding and declaration that:
... the generation, handling, storage and disposal of hazardous substances and wastes pose an inherent danger of exposing the citizens, property and natural resources of this State to substantial risk of harm or degradation; that the closing of operations and the transfer of real property utilized for the generation, handling, storage and disposal of hazardous substances and wastes should be conducted in a rational and orderly way, so as to mitigate potential risks; and that it is necessary to impose a precondition on any closure or transfer of these operations by requiring the adequate preparation and implementation of acceptable cleanup procedures therefor. [N.J.S.A. 13:1K-7; emphasis added]
*218 The ECRA imposes this cleanup precondition to any closure of a plant or transfer of operation pursuant to N.J.S.A. 13:1K-9 and N.J.S.A. 13:1K-11 only on "industrial establishments" as defined in N.J.S.A. 13:1K-8(f). Under that statute:
"Industrial Establishment" means any place of business engaged in operations which involve the generation, manufacture, refining, transportation, treatment, storage, handling, or disposal of hazardous substances or wasted on-site, above or below ground having a Standard Industrial Classification number within 22-39 inclusive, 46-49 inclusive, 51 or 76 as designated in the Standard Industrial Classification Manual prepared by the Office of Management and Budget in the Executive Office of the President of the United States. Those facilities or parts of facilities subject to operational closure and post-closure maintenance requirements pursuant to the "Solid Waste Management Act," P.L. 1970, c. 39 (C.13:1E-1 et seq.), the "Major Hazardous Waste Facilities Siting Act," P.L. 1981, c. 279 (C. 13:1E-49 et seq.) or the "Solid Waste Disposal Act" (42 U.S.C. § 6901 et seq.), or any establishment engaged in the production or distribution of agricultural commodities, shall not be considered industrial establishments for the purpose of this act. ... [Emphasis added]
The plain language of N.J.S.A. 13:1K-8(f) excludes from its definition of "industrial establishment" those "facilities," like landfills, which are subject to the closure requirements of the SWMA. The operational closure and post-closure maintenance requirements of the SWMA are set forth in the Sanitary Landfill Facility Closure and Contingency Fund Act, N.J.S.A. 13:1E-100 et seq., which supplements the SWMA. Also, the SWMA exclusion from ECRA's definition of "industrial establishment" is manifest in the regulations issued under ECRA which specifically state that SWMA facilities are excluded from the ECRA. See N.J.A.C. 7:26B-1.8(a)1i.
The ECRA expressly excludes from its definition of "industrial establishment" only those "facilities or parts of facilities" subject to the SWMA. N.J.S.A. 13:1K-8(f). The ECRA does not define the term "facilities." But the SWMA defines "solid waste facilities" to
... mean and include the plants, structures and other real and personal property acquired, constructed or operated or to be acquired, constructed or operated by any person pursuant to the provisions of this or any other act, including transfer stations, incinerators, resource recovery facilities, sanitary landfill facilities or other plants for the disposal of solid waste, and all vehicles, equipment and other real and personal property and rights therein and appurtenances *219 necessary or useful and convenient for the collection of disposal of solid waste in a sanitary manner. [N.J.S.A. 13:1E-3h; emphasis added].
An industrial detinning plant is neither a "sanitary landfill" as defined in N.J.A.C. 7:26-1.4, p. 26-21, nor any other type of "solid waste facility" within the purview of the SWMA, N.J.S.A. 13:1E-3(h). Simply because Vulcan's plant is located on top of a former municipal solid waste landfill does not make the plant a part of the closed landfill. Nor does that fact subject the plant to the SWMA and thus bring it within the exception contained in the ECRA, N.J.S.A. 13:1K-8(f). The municipal landfill was closed and "covered" over a period of time beginning in the early 1960's. The covered landfill was then sold for commercial development. As a result, Vulcan's plant was built on the land surface covering the retired landfill. Thus, the plant was never an integral, physical part of the landfill "facility" over which it was built. Instead, the two entities rest in discrete stratification levels, separate and apart from one another. Each performed an entirely different function at entirely different times.
Significantly, Vulcan argued persuasively before the DEP that it never had any real connection with the landfill's operations; that it leased the land surface from the owner long after the landfill ceased to operate. Vulcan also argued successfully before the DEP that the ECRA applies to "industrial establishments" and that landfill facilities subject to the closure requirements of the SWMA were explicitly not considered to be "industrial establishments" under the plain language of the ECRA, N.J.S.A. 13:1K-8(f). According to Vulcan, while its plant site was an "industrial establishment" subject to the ECRA, the underlying landfill was not. Thus, Vulcan agreed that under the ECRA it was "... required to address surficial contamination in its cleanup plan," associated with operation of the plant after the landfill had closed. Ironically, if we were to accept Vulcan's arguments advanced in these appeals, it would have no cleanup responsibility under the ECRA or the SWMA. Such an anomalous result cannot be countenanced.
*220 Vulcan's plant site is governed by the ECRA, while the landfill below it is governed by the SWMA. These different statutes should be read together and harmonized to accomplish their separate legislative purposes under the circumstances of this case. Superior Air Prod. v. NL Industries, 216 N.J. Super. 46, 63-64 (App.Div. 1987); e.g., VI-Concrete v. Dept. of Envir. Pro., 220 N.J. Super. 176, 183-184 (App.Div. 1987), certif. granted 109 N.J. 514 (1987). The ECRA should be given a liberal construction so as to achieve its public health purposes. "[S]tatutes which seek to protect the public health and welfare through the control of ... pollution are entitled to a liberal construction so that their beneficial objective can be accomplished." In re Environmental Protection Dep't., 177 N.J. Super. 304, 318 (App.Div. 1981); accord GATX Term. Corp. v. Environmental Prot. Dep't., 86 N.J. 46, 52 (1981); Lom-Ran v. Dept. of Environmental Protection, 163 N.J. Super. 376, 384 (App.Div. 1978). Moreover, where the statutory language is clear, courts will enforce the statute according to its terms. Sheeran v. Nationwide Mutual Ins. Co., 80 N.J. 548, 556 (1979). Russell v. Saddle Brook Restaurant Corp., 199 N.J. Super. 186, 188 (App.Div. 1985). It is clear that Vulcan should be required under the ECRA to cleanup any surface contamination contained at its detinning facility. In re Environmental Protection Dep't, supra, 177 N.J. Super. at 318. We do not perceive the Vulcan's cleanup responsibilities under the ECRA will interfere with any subsurface cleanup of the landfill to be undertaken by others pursuant to the SWMA.
Finally, Vulcan contends the DEP acted arbitrarily and capriciously in determining that the "surface of a landfill is not a landfill." We find this contention is without merit. Factually, the surface of the landfill was covered. Vulcan's plant was then built on top of the cover material that overlaid the surface of the landfill. Hence, the plant was not built on the surface of a landfill. Moreover, we are satisfied after a thorough study of the record that the DEP carefully applied the provisions of the ECRA to a unique situation that was in all likelihood not *221 considered by the Legislature. The interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute, is entitled to great weight. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984).
The appeal filed under A-0473-86T7 is dismissed. The DEP decision of July 14, 1987 is affirmed under A-6188-86T7.