607 A.2d 682

G & S INVESTORS FRELINGHUYSEN AVENUE, INC., A NEW JERSEY CORPORATION, PLAINTIFF–APPELLANT, v. ARISTOCRAT LEATHER PRODUCTS, INC., EVANS RULE COMPANY, INC. F/K/A EVANS–ARISTOCRAT INDUSTRIES, INC., MEM COMPANY, INC., PAUL GAST, SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, A PARTNERSHIP ORGANIZED FOR THE PRACTICE OF LAW, AND LEGGETT & PLATT, INC., DEFENDANTS, AND SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, A PARTNERSHIP ORGANIZED FOR THE PRACTICE

OF LAW, THIRD–PARTY PLAINTIFF, v. MCCARTER & ENG-
LISH, THIRD–PARTY DEFENDANT, AND ARISTOCRAT
LEATHER PRODUCTS, INC. AND MEM COMPANY, INC.,
THIRD–PARTY PLAINTIFFS, v. MASCO CORPORATION AND
MARKAY PRODUCTS COMPANY, INC., THIRD–PARTY DE-
FENDANTS.

Superior Court of New Jersey
Appellate Division

Argued April 28, 1992—Decided May 20, 1992.

Before Judges ANTELL, BAIME and THOMAS.

*Kevin J. Bruno* argued the cause for appellant G & S Investors (*Hannoch Weisman,* attorneys; *Kevin J. Bruno,* of counsel; *Kevin J. Bruno* and *Suzanne Q. Chamberlin,* on the brief).

*Karen L. Jordan,* Deputy Attorney General, argued *amicus curiae* for Department of Environmental Protection and Energy (*Edward J. Dauber,* Acting Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *Karen L. Jordan,* Deputy Attorney General, on the brief).

*Mary Lou Delahanty* argued the cause for respondents Aristocrat Leather, Inc. and Mem Company, Inc. (*Picco Mack Herbert Kennedy Jaffe & Yoskin,* attorneys; *Mary Lou Delahanty,* of counsel; *Mary Lou Delahanty* and *Stacy S. Weinstein,* on the brief).

*John A. Adler* argued the cause for respondent Evans Rule Company (*Hellring Lindeman Goldstein & Siegal,* attorneys; *John A. Adler,* of counsel and on the brief).

*William J. O'Shaughnessy* argued the cause for respondent McCarter & English (*Clapp & Eisenberg,* attorneys; *William*

*J. O'Shaughnessy* of counsel; *William J. O'Shaughnessy* and *Frederic S. Kessler*, on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

On December 27, 1985, plaintiff purchased an industrial building located on Frelinghuysen Avenue in Newark from defendant Evans–Aristocrat Industries, Inc., now known as Evans Rule Company, Inc., for $1,125,000. On November 12, 1985, defendant requested from the New Jersey Department of Environmental Protection and Energy ("DEPE"), then known as the Department of Environmental Protection, a "letter of non-applicability," declaring that the transaction would not be subject to the New Jersey Environmental Cleanup Responsibility Act ("ECRA"), *N.J.S.A.* 13:1K–6 *et seq.* Although not formally provided for by regulation, such letters were issued by DEPE in accordance with "general policies and procedures" under the authority of *N.J.S.A.* 13:1K–10. *See, In re Adoption of N.J.A.C. 7:26B,* 250 *N.J.Super.* 189, 203–204, 593 *A.*2d 1193 (App.Div.1991), *affirmed in part, rev'd in part,* 128 *N.J.* 442, 608 *A.*2d 288 (1992).

As part of its application, defendant submitted an affidavit prepared by its plant manager, defendant Paul Gast, to the effect that no chemical or hazardous substances had been used in the defendant's operations. Paragraph 10 thereof specifically recites that "the operations of Aristocrat do not involve and, to my knowledge, have not involved the generation, manufacture, refining, transportation, treatment, handling or disposal of hazardous substances on-site, above or below ground." Notably absent from that statement was any reference to the "storage" of hazardous substances.

On December 3, 1985, DEPE issued the letter of non-applicability, stating that the sale of the property was not subject to the provisions of ECRA. The letter, however, expressed DEPE's understanding that defendant had not been engaged in

operations which involve the "generation, manufacture, refining, transportation, treatment, *storage*, handling or disposal of hazardous waste or substances." (emphasis added). After receipt of DEPE's letter, the closing took place and closing documents revealed the presence of an underground fuel storage tank on the premises. The fuel stored in the tank was used to heat the building.

In 1988 plaintiff entered into negotiations looking toward a possible sale of the property to Citibag, Inc., and applied for a letter of non-applicability from DEPE on July 5, 1988. In its letter to DEPE, plaintiff noted that the property had two underground fuel tanks, one which served the premises and another which served a contiguous property not owned by plaintiff. Based on this information, DEPE replied under date of August 5, 1988, that plaintiff's sale of the property to Citibag would be subject to the provisions of ECRA. DEPE further indicated that the previous transfer in December 1985 from defendant to plaintiff was also subject to ECRA, and the letter of non-applicability pertaining to that transaction was accordingly rescinded.

On May 25, 1990, plaintiff filed an amended complaint seeking, among other things, indemnification for cleanup costs that plaintiff anticipated it would have to bear under ECRA. The basis of the complaint lies in defendant's having obtained a letter of non-applicability in 1985 by failing to reveal the underground fuel tanks which, according to DEPE, subjected the sale to the requirements of ECRA.

 ECRA obliges an owner or operator of an "industrial establishment," as defined in *N.J.S.A.* 13:1K–8f, that closes or transfers its facility to submit a cleanup plan and provide financial assurance for the cleanup of any hazardous materials discharged at the property before it closes or transfers ownership. *N.J.S.A.* 13:1K–9. ECRA's applicability to a transaction is determined by a three-part test:

1. Whether the facility is planning to close operations, or to transfer its operations or the real property where they are located. *N.J.S.A.* 13:1K–9;
2. Whether the facility has a standard industrial classification ("SIC") number and has not been exempted by regulation. *N.J.S.A.* 13:1K–8f;
3. Whether the facility is an industrial establishment, that is, one which is "engaged in operations that involve the generation, manufacture, refining, transportation, treatment, *storage,* handling or disposal of hazardous substances or wastes on-site above or below ground...." *N.J.S.A.* 13:1K–8f. (emphasis added).

The first two parts of the test are clearly satisfied herein. What is disputed is whether the presence of the heating fuel tanks on the property establishes defendant's business as one which is "engaged in operations that involve the ... storage ... of hazardous substances on-site above or below ground...."

Plaintiff now appeals from an order for summary judgment entered in the Law Division on August 7, 1991, which determined that the term "industrial establishment" as used in *N.J.S.A.* 13:1K–8f does "not include a place of business which merely has fuel oil in storage for use in heating the facility," and that ECRA therefore did not apply. The court stated the following:

I think the fuel oil or any other hazardous substance has to be again used as an integral part of its operation and not for an ancillary purpose which I would define as heating the facility.

We disagree with the restrictive reading accorded the statute by the Law Division.

■ ECRA is to be given a liberal construction in order to achieve its public health purpose. *Matter of Vulcan Materials Co.,* 225 *N.J.Super.* 212, 220, 542 *A.*2d 25 (App.Div.1988). " '[S]tatutes which seek to protect the public health and welfare through control of ... pollution are entitled to a liberal construction so that their beneficial objective can be accomplished.' " *Ibid.* (quoting *In re Environmental Protection Dep't.,* 177 *N.J.Super.* 304, 318, 426 *A.*2d 534 (App.Div.1981)); *accord, In re Robert L. Mitchell Tech. Ctr.,* 223 *N.J.Super.* 166, 173, 538 *A.*2d 410 (App.Div.), *certif. denied,* 111 *N.J.* 605, 546 *A.*2d 526 (1988).

The fuel oil contained in the storage tanks is obviously a petroleum product. Petroleum products are "hazardous substances" under *N.J.S.A.* 13:1K–8d and *N.J.A.C.* 7:26B–1.3. The fuel oil is contained within the underground tank so as "to protect the materials themselves," and therefore falls within the concept of "storage" as it was explained in *Matter of Fabritex Mills, Inc.*, 231 *N.J.Super.* 224, 231, 555 *A.*2d 649 (App.Div.1989).

"[S]tatutes should be construed in a commonsense manner which will advance their legislative purpose." *In re Robert L. Mitchell Tech. Ctr., supra,* 223 *N.J.Super.* at 172, 538 *A.*2d 410. ECRA's purpose is to protect the citizens of this state from risks resulting from contamination of underground water, to protect natural resources and to protect property. *N.J.S.A.* 13:1K–7. It is irrelevant to that legislative purpose whether fuel oil is used to heat an industrial establishment or whether it is used in a furnace to manufacture a product. The contamination of underground water is the same in either case if the storage tank containing the hazardous substance leaks.

We find nothing within the language of the statute to require that the stored hazardous substances be directly utilized in the industrial processes of the business before the cleanup requirements of ECRA are activated. "[W]here the statutory language is clear, courts will enforce the statute according to its terms." *Matter of Vulcan Materials Co., supra,* 225 *N.J.Super.* at 220, 542 *A.*2d 25. *N.J.S.A.* 13:1K–8(f), which defines "industrial establishment," focuses upon any place of business engaged "in operations which involve the . . . storage . . . of hazardous substances . . . on-site, above or below ground." The word "involve" is of common understanding and is defined in *Webster's 9th New Collegiate Dictionary* (1990) as "to relate closely: connect"; "to include"; "to require as a necessary accompaniment: entail"; and "to have an effect on." We conclude that as a matter of common understanding the heat within the building which is created by the fuel contained

in the storage tank relates closely, is a necessary accompaniment, has an effect on and concerns directly the ability of an industrial establishment within the State of New Jersey to carry on business during the winter months.

The order for summary judgment is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion.