726 A.2d 983 (1998)
320 N.J. Super. 90
Brian W. CLYMER, Treasurer of the State of New Jersey, in his capacity as the Unclaimed Property Administrator, Plaintiff,
v.
SUMMIT BANCORP., Formerly UJB Financial Corporation, a New Jersey Corporation, Defendant.
Superior Court of New Jersey, Chancery Division, Mercer County.
Argued May 14, 1998.
Decided June 10, 1998.
*985 Christine Roy, Deputy Attorney General, for plaintiff (Peter Verniero, Attorney General of New Jersey).
William C. Slattery, Short Hills, for defendant (Slattery, McElwee & Jespersen, P.C.).
*984 PARRILLO, P.J.Ch.
The State commenced this summary action under the Uniform Unclaimed Property Act (N.J.S.A. 46:30B-97) for custodial escheat of funds on deposit with defendant Summit Bancorp, representing outstanding unredeemed bearer and registered governmental bond principal and interest payable on or before June 30, 1994. N.J.S.A. 46:30B-1 to -109. The sole issue is whether the dormancy period for the proceeds (principal and interest) payable upon a debt security issued by a governmental entity is five years (N.J.S.A. 46:30B-7), as the Bank argues, or one year (N.J.S.A. 46:30B-41.2), as maintained by the State Treasurer.
The facts are not in dispute and have been stipulated by the parties. Generally speaking, in the matters before this court, a New Jersey state, county or municipal governmental entity, agency or authority has issued a bond obligating it to repay a stated amount at some future time and to make periodic payments of interest as set forth in the bond instrument. In each instance, United Jersey Bank Financial Corporation, now Summit Bancorp. (Bank) has been designated to serve as the paying or fiscal agent or trustee in the servicing of the debt. The Bank's functions and duties as trustee and paying agent are specified in a "bond resolution" or "trust indenture" which is, in effect, a contract wherein a governmental entity borrows money from members of the public, issues debt securities (bonds) evidencing its obligation to repay, and appoints a trustee to perform certain administrative functions and represent the interest of the members of the public who loaned the money and hold the bonds (bondholders). In the normal course, funds to secure payment of the principal and interest on the bonds are deposited by the governmental entity with the Bank which holds and deals with these monies, ensures that the covenants and other provisions of the indenture are adhered to and, in the event of default, has the primary responsibility for enforcing the remedial provisions of the contract.
While the bonds in issue are of various typesgeneral revenue bonds, industrial revenue bonds, general obligation bonds, utility bonds and refunding bondsthey all share a common characteristic in having been issued by a public body. So, for instance, general obligation bonds are issued by state or municipal government and backed by the governmental taxing power. General revenue bonds are issued by public entities created by the Legislature to issue tax-exempt bonds to finance construction of hospitals, educational facilities and housing units and are repaid by the issuer out of the revenues derived from the completed project.[1] Taxexempt industrial revenue bonds are issued pursuant to the New Jersey Economic Development Authority (NJEDA) Act, N.J.S.A. 34:1B-1 to -164, the proceeds of which are loaned by the NJEDA to a private corporation to finance construction or modernization of commercial structures such as manufacturing plants.
Bonds issued by municipal and county utility authorities and other special purpose entities are secured by the revenue generated by the utility or special purpose.[2] Refunding *986 bonds are bonds which are issued to pay prior indebtedness by replacing or paying off an outstanding bond which the holder surrenders for new security, as when short-term interest rates are lower than those borne by the issuer's outstanding bonds.
The bonds involved in this litigation are issued in either coupon or registered form. A "coupon bond" is a bearer negotiable instrument, the title to which passes by mere delivery. Attached to such a bond are "coupons" for the payment of each interest installment. These "interest coupons" are bearer instruments that, on the respective interest due dates, can be presented for payment.
A "registered bond" is a bond that is payable to a specific owner listed on the bond registry of the issuer. Payment of interest is made by mailing a bank check issued by the trustee or paying agent to the owner at the address shown on the bond registry as of the "record date".
In some instances, the Bank has not paid the bondholder because a bond has not been presented for redemption, an interest coupon has not been presented for payment, a remittance issued has not been negotiated, or a remittance has been returned as undeliverable by the post office. While it is clear that this unclaimed property must be reported and ultimately delivered into the protective custody of the State Treasurer in accordance with the process set forth in the Unclaimed Property Act, N.J.S.A. 46:30B-1 to -109, the issue in this case concerns the requisite dormancy period for such property that triggers the presumption of abandonment and begins the statutory process. The Bank argues that section 7 of the Act (N.J.S.A. 46:30B-7) applies, which is a general provision governing any form of intangible property not otherwise dealt with elsewhere in the Act, and establishing a five year dormancy period, while the State maintains section 41.2 (N.J.S.A. 46:30B-41.2) controls, which is a specific provision governing intangible property held by a governmental entity and establishing a one year dormancy period.
Based on the latter view, in May 1993, the State Treasurer commenced an audit of the Bank's Commercial Trust Department responsible for handling state and municipal bond funds. This audit revealed that the Bank had not reported or paid to the Treasurer unclaimed municipal bond principal that matured on or before June 30, 1992, through June 30, 1993, and municipal bond interest payable from June 30, 1992, through June 30, 1993. On August 1, 1994, the State transmitted its audit report and demand for this unclaimed property under the one year dormancy period. The Bank complied and on August 26, 1994, sent the State $3,029, 658.54, the full amount reported in the audit.
A follow-up audit was conducted in May June 1995. This audit revealed the Bank was holding unclaimed property representing outstanding unredeemed bearer and registered governmental bond principal and interest that had become payable between July 1, 1993, and June 30, 1994, and that, according to the Treasurer, would have to be reported and paid to the State before November 1, 1995. Unlike the previous year, however, the Bank refused the State's demand for this unclaimed property, citing the five year abandonment period. The State filed this action seeking the immediate turnover of the disputed funds. Both parties have moved for partial summary judgment as to the proper abandonment period under the Act.
For reasons which follow, section 41.2 controls and requires that the proceeds of government bond payments on deposit with the Bank and remaining unpaid to the bondholders for one year after those proceeds are payable are to be reported and delivered to the custody of the State Treasurer.
The Uniform Unclaimed Property Act, N.J.S.A. 46:30B-1 to -109, (Act), which became effective April 14, 1989, revises New Jersey escheat law (N.J.S.A. 2A:37-1 to -50) to conform with the Model Act[3] promulgated by the National Conference of Commissioners *987 on Uniform State Laws. Statement to Senate Bill No. 2093, L. 1989, c. 58. The Act establishes a procedure by which intangible property that is presumed abandoned is transferred to the State as custodian for the absent owner. In re November 8, 1996 Determination of the State of New Jersey, Dep't. of the Treasury, Unclaimed Property Office, 309 N.J.Super. 272, 706 A.2d 1177 (App.Div.1998).
As such, the Act provides for custodial escheat as distinguished from absolute escheat, which had prevailed under the 1946 Act, N.J.S.A. 2A:37-1 to -50 (repealed). The distinction was explained in Pennsylvania v. Kervick, 114 N.J.Super. 1, 8, 274 A.2d 626 (Ch.Div.1971) rev'd on other grounds 60 N.J. 289, 288 A.2d 289 (1972):
Escheat in New Jersey derives from the right of the sovereignty of the State "as the original and ultimate proprietor" of all property within its jurisdiction. The purpose of all escheat laws is not only to enrich the State but to put into active use funds that are unclaimed and lying dormant. Yet, escheat statutes should be distinguished from custodial statutes which make the State a custodian of the abandoned property, subject to delivery to those who prove ownership or a right to possession. The Custodial Escheat Act of 1951 amended the prior Absolute Escheat Act of 1946 to add an alternative method of escheat, using an intermediate custodial procedure.
In considering adoption of the Act, our Legislature reiterated the public policy in favor of the custodial taking of unclaimed property by the State Treasurer:
It is the public policy of this State that all unclaimed property shall be placed into the protective custody of the State Treasurer after the property has remained in the hands of the holder for a specified period of time. The rights of the original party in interest shall not be forfeited or extinguished. The State Treasurer serves as the conservator or trustee of the unclaimed property, acting always, and with full authority, to safeguard and foster the rights of the original owner or party entitled to the property.
[Statement to Senate Bill 888 (1983) at 20 (Nov. 23, 1987) ].
As part of the statutory procedure, a person holding property subject to the Act that is "presumed abandoned" pursuant to its terms is required to report and deliver that property to the State Treasurer, N.J.S.A. 46:30B-46 to -49, who serves as Administrator of the State's unclaimed property program. N.J.S.A. 46:30B-6a. Intangible property is deemed abandoned after the expiration of a statutorily authorized period of time during which an instrument remains unnegotiated or undeliverable or no owner-generated activity occurs in an account. N.J.S.A. 46:30B-7. This "dormancy" period varies under the Act depending on the nature of the intangible property involved (Articles 4 through 16) or, in some instances, the identity of the holder (Articles 12 and 13).
Regardless of the applicable dormancy period, once turned over to the Treasurer, title to the unclaimed property does not vest in the State but remains in the owner, as the State only assumes custody of the intangible property until the owner or his or her successors assert a claim that is verified and allowed. In the meantime, the property is placed in the Unclaimed Personal Property Trust Fund and the Treasurer has the discretion to transfer a percentage of these funds to the State Treasury's General Fund. N.J.S.A. 46:30B-74. Seventy-five percent of all proceeds from property received by the State (except abandoned child support funds) is transferred from the unclaimed property trust funds to the General State Fund; the balance is used to pay claims of persons who establish their ownership of the presumptively abandoned property in the State's custody. Id.
Thus, all unclaimed funds are held by the Treasurer as trustee for the public interest. Notice is published in newspapers of general circulation listing the missing owners. N.J.S.A. 46:30B-51. A person may make a claim to the property at any time in perpetuity. N.J.S.A. 46:30B-77. Notably, when a claim is verified and paid, the Treasurer pays interest for the period during which the monies were in state custody. N.J.S.A. 46:30B-79. By the same token, *988 upon delivery of the unclaimed property to the Treasurer, a holder is fully and unconditionally relieved of all liability concerning the property. N.J.S.A. 46:30B-61. If some party thereafter claims the fund by an action against the former holder, the State will defend the holder against the claim and indemnify the holder against liability. N.J.S.A. 46:30B-65.
The funds in questionunclaimed governmental bond principal and interest are undoubtedly intangible property covered by the Act, reportable and payable to the State when "presumed abandoned." N.J.S.A. 46:30B-6a. Because these funds are ultimately escheatable to the State, the only issue is when this property is deemed to be abandoned; in other words, whether the State or the Bank shall have use of the property, provided it remains unclaimed, between the first and fifth year after it becomes payable to the bondholder.
Article 2, N.J.S.A. 46:30B-7 to -8, establishes as a general rule that intangible personal property is presumed abandoned if it remains unclaimed for five years. N.J.S.A. 46:30B-7 provides:
Except as otherwise provided by this chapter, all intangible property, including any income or increment derived therefrom, less any lawful charges, that is held, issued, owing in the ordinary course of a holder's business and has remained unclaimed by the owner for more than five years after it became payable or distributable is presumed abandoned.
By its own terms, the general rule applies unless a different time period is specified in the Act.
Articles 4 through 16, N.J.S.A. 46:30B-11 through N.J.S.A. 46:30B-45, modify the general rule in particular circumstances. Thus, N.J.S.A. 46:30B-41.2 reduces the period that raises a presumption of abandonment from five years to one year if the property is held by a governmental entity. Section 41.2 is part of Article 13 of the Act which concerns property held by courts and public agencies and provides for a ten year dormancy period for deposits in the Superior Court and Surrogate's Court, N.J.S.A. 46:30B-41; a two year period for minor's funds, N.J.S.A. 46:30B-41.1; and, as noted, a one year dormancy period for all other funds held by a governmental entity, N.J.S.A. 46:30B-41.2. The latter provision states in full:
Except as otherwise provided in this article, any intangible property held by the executive, legislative, or judicial branch of the United States Government, or a state, or a county or municipal subdivision of a state, or any of their authorities, agencies, instrumentalities, administrations, services or other organizations, and remaining unclaimed for more than one year after it became payable or distributable is presumed abandoned.
Certain principles of statutory construction inform the court's decision. In the first place, the court must look at the evident wording of the statute to ascertain its plain meaning and intent. Renz v. Pennsylvania Cent. Corp., 87 N.J. 437, 440, 435 A.2d 540 (1981). "[W]here the statutory language is clear, courts will enforce the statute according to its terms." Matter of Vulcan Materials Co., 225 N.J.Super. 212, 220, 542 A.2d 25 (App.Div.1988). Secondly, the provisions in issue here are part of a single, unified statutory chapter governing all forms of unclaimed intangible property held by all private and public entities and, as such, these provisions must be read in pari materia. Goff v. Hunt, 6N.J. 600, 606, 80 A.2d 104 (1951). The intention and sense of the law is to be gathered from its object, the nature of the subject matter and the whole of the content. Id. While the parts of the statute are to be viewed in relation to the whole, where there is a seeming conflict between a general provision and a specific provision covering a subject in a more minute and definite way, the latter shall prevail over the former and will be considered an exception to the general rule. Id. at 607, 80 A.2d 104. See also Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 165, 65 A.2d 828 (1949). Finally, because a custodial taking of unclaimed property by the State Treasurer does not forfeit the owner's claim, there is no need to interpret the Act narrowly as there had been when the escheat was absolute. State v. Sperry & Hutchinson Co., 23 N.J. 38, 43-44, 127 A.2d 169 (1956); State v. Elsinore Shore Associates, 249 N.J.Super. *989 403, 406, 592 A.2d 604 (App.Div.1991). To the contrary, because of the remedial effect of the custodial scheme, the Act has been given a liberal interpretation in favor of the State. Safane v. Cliffside Park, 5 N.J. Tax 82, 88 (1982).
These principles fully support the application of Section 41.2 of the Act to the funds in dispute, directing their remittance to the State Treasurer only one year after becoming due and payable to the nonclaiming bondholders. As noted, the statutory scheme clearly distinguishes between intangible property held by private and public entities. Section 41.2 carves out of Section 7's rule of general applicability an exception dealing expressly and narrowly with unclaimed funds of a governmental entity. Indeed, Section 41.2 itself is part of Article 13 of the Act concerning, somewhat more generically, property held by courts and public agencies, further evidencing legislative intent to differentiate this property from that held by most other entities and to treat it separately.[4]
Under the plain language of Section 41.2, the government entities involved here are holders of the funds in issue. A "holder" is defined in N.J.S.A. 46:30B-6(g) as a "person... indebted to another on an obligation." A "person" includes a "state or other government, governmental subdivision or agency..." N.J.S.A. 46:30B-6(l). In this case, the funds in question have been deposited with the Bank by the governmental entities to satisfy their obligations to the holders of bonds they issued. Although the Bank may have physical possession of the funds that are unclaimed, these funds represent the indebtedness of the governmental entities and are payable to the bondholders. Accordingly, the governmental entity is considered the ultimate obligor and thus a "holder" as that term is defined in Section 6(g) and employed in Section 41.2. Cf. Adams v. Hackensack Improvement Commission, 44 N.J.L. 638, 646-647 (E & A 1882); Mershon v. Millerstown Borough, 128 Pa.Super. 248, 193 A. 328 (1937); Morley v. University of Detroit, 263 Mich. 126, 248 N.W. 570 (1933).
The character of the property did not change when it passed into government bond accounts in the corporate trust department of the Bank or were deemed to be trust funds by a trust indenture. Rather the funds remain the aggregate payments of principal and interest due the bondholders from the issuing governmental entity. Cf. Hannoch Weisman v. Brunetti, 15 N.J. Tax 197 (App. Div.1995).
At issue in Hannoch Weisman were unclaimed property tax refunds for tenants of an apartment complex held by the Borough of New Milford. The Borough claimed entitlement to administer the unclaimed refunds pursuant to its municipal rent leveling ordinance. The Tax Court ordered the funds to be placed into an escrow account for investment and then paid over to the Superior Court Trust Fund while the individual interests were computed and refunds remitted to the ascertainable claimants. After deciding the local ordinance establishing a municipal repository for abandoned rent refunds was preempted by the Uniform Unclaimed Property Act, the Appellate Division further determined the unclaimed refunds were subject to the one year abandonment period as funds held by a municipal subdivision of a state rather than the five- or ten-year abandonment periods established for funds in an escrow account or paid into court respectively. The Appellate Division's rationale in Hannoch Weisman is equally persuasive here:
This process did not change the character of the funds. The one-year abandonment presumption in N.J.S.A. 46:30B-41.2 did not change to a five-year presumption under N.J.S.A. 46:30B-37 because the refunds were deposited into a fiduciary account. Nor did the abandonment period *990 increase to ten years because the court ordered the escrow account balance to be paid into court. The funds, therefore, did not become subject to the ten year provision of N.J.S.A. 46:30B-41. The State's power to control this unclaimed property as custodian subject to any bona fide claim of an owner thereof should not be thwarted by the court's administrative orders either directing an escrow or a deposit into court.

[15 N.J. Tax at 202].
The issue in our case over the identity of the "holder" arises because, as in Hannoch Weisman, there has been a transfer of the subject funds by a governmental entity to an intermediary (Bank) who has custody of the property in trust for the beneficial owners (bondholders). However, just as the deposit of unclaimed tax refunds into a fiduciary account did not change the nature of the property in Hannoch Weisman, the funds in question here retain their original character and remain payments due on government bonds. The deposits with the Bank were made for the sole purpose of discharging their debt as the issuing authorities and are to be applied by the trustee Bank exclusively to satisfy their obligation to the bondholders. That the public entity designates the Bank as its fiscal agent to deliver payment does not change its obligation to the bondholders.
By agreeing to be the public entity's agent for payment, the Bank undertakes fiduciary obligations to the public entity. Rudbart v. Water Supply Commission, 127 N.J. 344, 362, 605 A.2d 681 (1992); See also Campagna v. United States, 474 F.Supp. 573, 585 (D.N.J.1979); Candlewood Obstetric-Gynecologic v. Signet Bank, 805 F.Supp. 328, 331 (D.Md.1992); N.J.S.A. 3B:14-53(b). On this score, Section 40 of the Act, N.J.S.A. 46:30B-40, which admittedly does not control the present situation[5], nevertheless offers guidance on the manner in which an agent "holds" property in a fiduciary capacity under the Act. Thus, Section 40 provides:
For the purposes of this article, a person who is deemed to hold property in a fiduciary capacity for a business association alone is the holder of the property only insofar as the interest of the business association in the property is concerned, and the business association is the holder of the property insofar as the interest of any other person in the property is concerned.
By parity of reasoning, and by virtue of the contract (trust indenture) between them, the Bank may be considered to "hold" the funds deposited by the issuer only insofar as the interest of the public entity in the property is concerned. However the Bank's status as custodial trustee does not alter the fact that the public entity is the holder of the funds (i.e., obligor) insofar as the interest of any other person, including the bondholders, is concerned.
Indeed, Section 41.2 incorporates this very notion. Section 41.2 extends to funds held not only by "a state ... county or municipal subdivision of a state", but as well to "any of their authorities, agencies, instrumentalities, administrations, services or other organizations...." As the public entity's agent when administering and managing the bond accounts, the Bank, as intermediary, may be considered to come within the broadly expanded class of governmental entities and the myriad forms they assume under Section 41.2.
In other words, the Bank's right to interim physical custody of the funds does not control the applicable dormancy period under the Act. Cf. State v. Elsinore Shore Associates, 249 N.J.Super. 403, 592 A.2d 604 (App.Div. 1991) (casino funds reserved for unredeemed chips and tokens were considered to be held by conservator appointed by State Casino Control Commission for purposes of applying the one-year abandonment period, even though funds physically remained where they had been invested). Rather, what does control is the nature of the property itself and the underlying obligation it represents (government bonds) as well as the identity of the ultimate obligor (the issuing government entity).
In fact, the Bank acknowledges that the governmental entity is ultimately obligated to honor the debt which its bonds and coupons *991 represent and that the Bank simply stands in the shoes of the public entity as it administers the funds held in trust. And the bond documents support this position. For example, the Bank was named Trustee, Paying Agent and Depository for the University of Medicine and Dentistry of New Jersey Bonds Series A, B, and C (UMDNJ Bonds). These bonds were issued pursuant to a General Bond Resolution, which provided in relevant part:
SECTION 1311. Obligations of the University Unconditional. Nothing contained in this Resolution or in any Bond is intended to or shall impair, as between the University and the Holders of the Bonds, the obligation of the University, which is absolute and unconditional, to pay to the Holders of the Bonds the principal and interest on the Bonds as and when the same shall become due and payable in accordance with their terms, or is intended to or shall affect the relative rights of the Holders of the Bonds and creditors of the University nor shall anything herein or therein prevent the Trustee or the Holder of any Bond from exercising all remedies otherwise permitted by applicable law upon default under this Resolution, in respect of cash or property of the University received upon the exercise of any such remedy.[6]
Despite its own acknowledgement, the Bank nevertheless contends that once sufficient funds have been deposited in trust to pay the principal and interest due, the governmental entity has satisfied its payment obligation and the Bank becomes the "person obligated" and thus the "holder" for purposes of N.J.S.A. 46:30B-6(g). To be sure, there is language in some of the bond resolutions which recognizes that the bondholders have a right to redeem their coupons and receive payment from the Bank.[7] However this observation simply begins, not ends, the inquiry into the precise nature of the Bank's relationship in these government bond transactions.
Our Supreme Court in Rudbart v. Water Supply Commission, 127 N.J. 344, 605 A.2d 681 (1992), addressed the type of duty undertaken by an indenture trustee on a government bond:
[Fidelity] served as an indenture trustee, which we take to mean that [the noteholders'] money was to pass through Fidelity's hands as a stakeholder or escrow agent for the benefit of the noteholders.
[Id. at 361-362, 605 A.2d 681].
As such, the Bank wears many hats and functions in multiple capacities as concerns both the issuer and bondholder to whom it owes separate contractual duties. As depository or paying agent, the Bank is charged with paying the obligation on behalf of the governmental entity issuing the bonds and returning unclaimed funds to the sender after *992 a certain period of time.[8] Correspondingly, as trustee the Bank is responsible for administering and managing the account for the benefit of the bondholders and, in the event of the issuer's default, for pursuing appropriate remedies on their behalf. The assumption of the latter duties however does not allow the Bank to reject the former to its own unjust enrichment. Stated somewhat differently, this multi-hatted trustee cannot pick and choose among those with whom it has contractual relationships whenever it suits its financial interests. There is, simply put, nothing in the Bank's split personality that changes the nature of the underlying obligation or detracts from the public entity's status as a "holder" within the meaning of N.J.S.A. 46:30B-6(g).
The issue of how to determine the identity of the "holder"when payments to an intermediary are at stakewas clarified by the decision in Delaware v. New York, 507 U.S. 490, 113 S.Ct. 1550, 123 L.Ed.2d 211 (1993) in the somewhat related context of debtor-creditor relationships arising under the Model Uniform Unclaimed Property Act of 1981. That case involved a dispute among States that asserted competing claims to abandoned intangible personal property. The funds at issue were unclaimed dividends, interest and other distributions made by issuers of corporate securities and held by intermediary banks. The United States Supreme Court held that the State wherein the true "debtor" (obligor) was incorporated has the right to escheat funds belonging to beneficial owners who cannot be identified or located. In this regard, the Court held an intermediary which holds property in its own name will generally be the debtor (under state law that creates the property interest) and not the original obligor which has satisfied its obligation by transmitting payment to the intermediary.
Critical to this decision was the fact that by arrangement with the beneficial owners, the intermediaries held the corporate securities in their own names rather than in the names of the beneficial owners. Thus, as record owners, the intermediaries were fully entitled to receive distributions based on those securities. From the perspective of the original debtorthe dividend-paying corporationthe only creditors are registered shareholders, those whose names appear on the issuer's records. Issuers cannot be considered debtors once they pay dividends, interest or other distributions to record owners; payment to a record owner discharges all of an issuer's obligations under the Uniform Commercial Code.
This reasoning fully supports the view that in our case, the governmental entities remain the "holder" of the obligation. First and most significantly, unlike the arrangement in Delaware v. New York, the original obligorsthe governmental entitiesdid not transfer the obligation but only the funds to satisfy the obligation and the Bank never became the record owner of the debt security. Secondly, the Bank never irrevocably appropriated these funds and the public entity never lost control of them inasmuch as the Bank could only apply them in strict accordance with the terms of the trust indenture which, incidentally, obligated the Bank to return unclaimed monies to the issuer after a certain period of time. Thirdly, the Bank has *993 offered no authority holding an intermediary alone, and not the issuer, legally obligated to the beneficial owners in these or similar circumstances. Lastly, the debtor-creditor relationship in Delaware v. New York was consideredin the context of a dispute over which of two States had the right to escheated funds. Here the identity of the ultimate obligor (i.e., holder) must be resolved within litigation pitting the State against a private stakeholder over which entity will enjoy use of the unclaimed funds one year after they become due, and as previously noted, policy considerations compel a liberal interpretation of the Act in favor of the State. State v. New Jersey Nat'l Bank & Trust Co., 62 N.J. 50, 54, 298 A.2d 65 (1972). In any event, there is no indication that our Legislature intended the applicable dormancy period for payments on government bonds be made to randomly depend on a strict interpretation of bond documents variously defining the fiduciary's contractual responsibilities.
The Bank's final argument, that the five-year dormancy period of N.J.S.A. 46:30B-16 applies to the funds upon which the uncashed bank checks were issued for registered bond interest,[9] fares no better. The unclaimed intangible property is not the check, note, certificate or other document that evidences the property interest, or the funds themselves, but the underlying right or obligation. See Blue Cross of Northern California v. Cory, 120 Cal.App.3d 723, 174 Cal. Rptr. 901, 908 (1981) ("right to be paid" is the " "intangible personal property" ... which is recognized in the UPL"). In the escheat context, the State "does not seek to collect the checks [or coupons], but rather to escheat the underlying obligations which the checks [and coupons] represent." Revenue Cabinet v. Blue Cross & Blue Shield, 702 S.W.2d 433, 436 (Ky.1986) ("The issue is not whether [Blue Cross/Blue Shield] is obliged to honor the checks perse after all the intervening years. The issue is whether BC/BS is obliged to honor the debt which the checks represent."). See also Connecticut Mutual Life Insurance Co. v. Moore, 333 U.S. 541, 542, 68 S.Ct. 682, 92 L.Ed. 863 (1948) (reference in New York's Abandoned Property Law to "any moneys held or owing" on an insurance policy does not refer to specific assets of an insurance company, but simply to the obligation of the life insurance company). Moreover, once the intangible property escheats to the State, the Bank is no longer liable on the instrument that evidences the property interest and is indemnified and held harmless by the State against any third party's belated claims. N.J.S.A. 46:30B-65.
For all these reasons, it is determined that the "holder" under the Actwhere payments of principal and interest on government bonds have been transmitted to an intermediary which has undertaken, in turn, to make payment to the bondholdersremains the original obligor, namely the governmental entity issuing the bonds.
This interpretation of the Act is also consistent with the strong public policy underlying its enactment. The Act is consumer protection and public interest legislation, protecting the interests of the true owner of property against confiscation by the holder while giving the State the benefit of its use until the owner claims it. See, e.g., Employers Ins. of Wausau v. Smith, 154 Wis.2d 199, 453 N.W.2d 856, 858 (1990); Louisiana Hospital Service, Inc. v. Collector of Revenue, 293 So.2d 663, 664 (La.App. 1974). To this end, the Act requires the State to attempt to locate, notice and inform missing owners of their rights of ownership, N.J.S.A. 46:30B-51, and once a claim is validated, to restore their property to them with interest. N.J.S.A. 46:30B-79. On the other hand, the clear public policy is that, in the meantime, unclaimed property be employed for public purposes rather than the unjust enrichment of third party holders who have no beneficial right to the property. State v. Jefferson Lake Sulphur Co., 36 N.J. 577, 178 A.2d 329 (1962). Our Supreme Court in Jefferson Lake, a case involving the Custodial *994 Escheat Act of 1951, N.J.S.A. 2A:37-1 to -50 (repealed), stated:
The statute represents the public policy of the State and it manifests the legislative will that such unclaimed moneys be used for the good of all our citizens. Support for the enactment is found in the police power ....

[36 N.J. at 588, 178 A.2d 329].
This sentiment was reiterated twenty years later in Safane v. Cliffside Park, 5 N.J. Tax 82 (1982), wherein the Tax Court said:
Generally, the public policy of the State is in favor of the custodial taking of abandoned or unclaimed property by the State Treasurer .... This public policy is so strong that attempts to circumvent a custodial taking by private arrangements or private law have been declared invalid.

[Id. at 88].
See also State v. New Jersey National Bank & Trust Co., 62 N.J. 50, 54, 298 A.2d 65 (1972).
Thus, as between the stakeholder and the State, public policy clearly favors the latter, by affording it full use of the unclaimed property and avoiding a windfall to the former. By withholding that benefit for five years instead of one year after the property becomes distributable, the Bank's overly strict interpretation not only contravenes well settled rules of statutory construction, but contradicts the important public policy sought to be achieved by the Act.
For all these reasons, plaintiff's application for partial summary judgment declaring the one-year dormancy period of N.J.S.A. 46:30B-41.2 applicable to the government bond funds in issue is granted. Defendant Bank is directed to remit the remaining unclaimed property, representing outstanding unredeemed bearer and registered government bond principal and interest, into the protective custody of the Treasurer.
NOTES
[1] See, e.g., New Jersey Health Care Facilities Financing Authority (NJHCFA) Act, N.J.S.A. 26:21-1 to -38; New Jersey Educational Facilities Authority (NJEFA) Law, N.J.S.A. 18A:72A-1 to -54; and New Jersey Housing and Mortgage Finance Agency (NJHMFA) Law of 1983, N.J.S.A. 55:14K-1 to -71.
[2] In New Jersey, bonds of this type are issued pursuant to the County and Municipal Utilities Authority (MUA) Law, N.J.S.A. 40:14B-1 to -70, and statutes such as the New Jersey Turnpike Authority Act, N.J.S.A. 27:23-1 to -40, and the Passaic Valley Sewerage Commissioners (PVSC) Act, N.J.S.A. 58:14-1 to -35.
[3] Uniform Unclaimed Property Act, 8B U.L.A. 567 (1981) (1981 Model Act).
[4] N.J.S.A. 46:30B-41 creates a presumption of abandonment when monies deposited with the Superior Court or Surrogate's Court were unclaimed for ten years. N.J.S.A. 46:30B-41.1 creates a presumption of abandonment when the monies deposited into the Superior or Surrogate's Court for the benefit of a minor are unclaimed for two years after the minor reached majority. N.J.S.A. 46:30B-41.2 creates a presumption of abandonment for any other form of unclaimed property held by any level or agency of government when the property is unclaimed for one year after it is payable or distributable.
[5] Section 40 does not apply to property held by an agent of a public entity, as in our case, but by its own terms only to property of business associations. N.J.S.A. 46:30B-40.
[6] Similarly, the Bank was named Trustee for Refunding Revenue Bonds (Series 1978), (Series 1978 Bonds), issued by the Bergen County Utilities Authority pursuant to a Bond which contained the following provision:

SECTION 104. Obligation of Bonds, and Pledge Securing the Same. The 1978 bonds shall be the direct and general obligations of the Authority secured solely by the Net Revenues derived from the operation, use or services of the System.
In another representative instance, the Gloucester County Improvement Authority issued municipal bonds to finance a 575-ton per day mass burn, resource recovery facility to be located in the Township of West Deptford, New Jersey, naming the Bank Trustee, Paying Agent and Registrar. As per the bond resolution, the bonds were the "direct and special obligations of the Authority" (Section 203) which was responsible for ensuring payments to bondholders are received by the Trustee (Section 604) and was required to defend, protect and preserve the pledge of revenues and the rights of bondholders against all claims and demands (Section 609). In the event of default by the Authority, the Trustee was responsible to pursue remedies under the resolution (Section 603). The Trustee, however, was not responsible to the obligation of the bonds (Section 1103).
[7] For instance, the Hackensack Water Bonds were issued by the New Jersey Economic Development Authority pursuant to N.J.S.A. 34:1B-2. The Trust Indenture provides that upon payment to the Trustee, the liability of the issuing authority ceases:

In the event any Bond shall not be presented for payment when the principal thereof becomes due ... and funds sufficient to pay any such Bond ... shall have been made available to the Trustee for the benefit of the holder ... all liability of the [New Jersey Economic Development] Authority to the holder thereof for the payment of such Bond ... shall forthwith cease, determine and be completely discharged
[8] The bond documents contain a private "statute of limitations" clause essentially escheating unclaimed funds in the fiduciary's possession to the issuing authority after a certain period of time. Typical is the following provision which appears in the UMDNJ Bond Resolution:

Anything in this Resolution to the contrary notwithstanding, any moneys held by a Fiduciary in trust for the payment and discharge of any of the Bonds which remain unclaimed on a date which is one day prior to the date on which such moneys would otherwise escheat to the state in which such Fiduciary is located shall from time to time at the written request of the University be repaid by the Fiduciary to the University, as its absolute property and free from trust, and the Fiduciary shall thereupon be released and discharged with respect thereto.
Of course to the extent these contractual escheat provisions violate the Act, by establishing an ultimate repository for the unclaimed funds other than the sovereign, they are void. Cf. State v. Jefferson Lake Sulphur Co., 36 N.J. 577, 596, 178 A.2d 329 cert. den. 370 U.S. 158, 82 S.Ct. 1253, 8 L.Ed.2d 402 (1962). They are offered here only to demonstrate the intent of the contracting parties that the transmitted funds have not been irrevocably appropriated by the intermediary and that the sender has not lost complete control or custody over such funds.
[9] N.J.S.A. 46:30B-16 provides in pertinent part: Any sum payable on a check, draft, or similar instrument ... on which a banking or financial organization is directly liable ... which has been outstanding for more than five years after it was payable on demand, is presumed abandoned....