758 A.2d 652 (2000)
334 N.J. Super. 252
Brian W. CLYMER, Treasurer of the State of New Jersey, in his capacity as the Unclaimed Property Administrator, Plaintiff-Respondent,
v.
SUMMIT BANCORP, Formerly UJB Financial Corporation, a New Jersey Corporation, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 2000.
Decided September 22, 2000.
William C. Slattery, Short Hills, argued the cause for appellant (Slattery & Jespersen, attorneys; Mr. Slattery, of counsel and on the brief).
Clifford T. Rones, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Mr. Rones, on the brief).
Before Judges STERN, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
Proceeding under N.J.S.A. 46:30B-97 to enforce New Jersey's version of the Uniform Unclaimed Property Act, N.J.S.A. 46:30B-1 to -109 (UUPA), the State seeks custodial escheat of the principal and interest on unredeemed bearer and registered governmental bonds for years 1994 and 1995, which defendant, Summit Bancorp (Summit), holds as fiscal agent. In Clymer v. Summit Bancorp, 320 N.J.Super. 90, 726 A.2d 983 (Ch.Div.1998), decided on cross-motions for summary judgment based on stipulated facts, the trial court held that the one-year dormancy period of N.J.S.A. 46:30B-41.2 applied rather than the five-year period of N.J.S.A. 46:30B-7. Accordingly, partial summary judgment was granted to the State.
The parties then conferred and stipulated the amounts of unclaimed property in Summit's control which remained payable; and the trial court entered judgment against Summit for a total of $531,195.47, exclusive of interest. The parties were unable to resolve the remaining issues regarding statutory interest and penalties. *653 The trial court heard argument on those issues and entered a final judgment incorporating its prior determinations and, pursuant to N.J.S.A. 46:30B-103, adjudging an additional $259,516.03 to be due for interest. The State's application for imposition of a civil penalty, pursuant to N.J.S.A. 46:30B-105, was denied.
Summit appeals, challenging the trial court's statutory interpretation determination that N.J.S.A. 46:30B-41.2 governs in the circumstances at hand rather than N.J.S.A. 46:30B-7. We disagree with the basis of the trial court's conclusion, that the State was the holder of the funds represented by the bond obligations involved here, and hence reverse.
The essential stipulated facts are set out in the trial court's opinion, Clymer, supra, 320 N.J.Super. at 94-96, 726 A.2d 983. There is no need to rehearse them.
We agree with the trial court that there appear to be strong public policies favoring the result it reached. Yet, a perception of the public policy concerns implicated in the operation of a statute is merely one tool available for use in interpreting the enactment. 2A Sutherland Statutory Construction § 45:05 at 34 (Singer ed., 6th ed. 2000) ("No single canon of interpretation can clarify with certainty exactly what the drafters intend."); see also Wildwood Storage Ctr. v. Mayor and Council of Wildwood, 260 N.J.Super. 464, 470-71, 616 A.2d 1331 (App.Div.1992) ("[V]arious canons or maxims of statutory construction [including public policy considerations] are tools not icons."). A court's view of public policy cannot be used to trump the plain language of the statute itself or the clearly expressed intendment of the drafters. Gibson v. New Jersey Mfrs. Ins. Co., 261 N.J.Super. 579, 584, 619 A.2d 636 (App.Div.1993). This is particularly so with respect to statutes based on uniform or model acts, see Town Tobacconist v. Kimmelman, 94 N.J. 85, 99-104, 462 A.2d 573 (1983), which, by definition, are designed "to unify the law ... and to conform New Jersey law to the law of other jurisdictions[.]" Twiss v. State, 124 N.J. 461, 469, 591 A.2d 913 (1991) (dealing specifically with the UUPA). In the absence of a contrary design, clearly articulated, the Legislature is taken to have adopted the expressed intention of the uniform act drafters. See In re Estate of Dobert, 192 Ariz. 248, 963 P.2d 327, 331 (Ct.App.1998) ("When a statute is based on a uniform act, we assume that the legislature `intended to adopt the construction placed on the act by its drafters.'" (quoting State v. Sanchez, 174 Ariz. 44, 846 P.2d 857, 860 (Ct.App.1993))).
N.J.S.A. 46:30B-7, founded upon § 2 of the Uniform Unclaimed Property Act of 1981, embodies the basic rule governing disposition of abandoned property. It establishes a five-year dormancy period as the generally operative criterion. N.J.S.A. 46:30B-41.2, which the trial court held to be controlling, is based upon § 13 of the 1981 Uniform Act, which embodies an exception to the general rule. The 1981 Uniform Act provisions are based, in turn, upon §§ 9 and 8 respectively of the Uniform Disposition of Unclaimed Property Acts of 1966 and 1954. In both earlier versions, the seven-year dormancy period of § 9 was denoted by the Uniform Commissioners' comment to be the general rule, subject to other, more specific provisions of that Act:
Section 9 is the omnibus section covering all other intangible personal property not otherwise covered by the more specific provisions of the Act. It should be noted that to be subject to the section the property must be held or owing in the "ordinary course of the holder's business in this state." A wide variety of items will be embraced under this section, including, by way of illustration, money, stocks, bonds, certificates of membership in corporations, securities, bills of exchange, deposits, interest, dividends, income, amounts due and payable under the terms of insurance policies not covered by section 4, pension trust *654 agreements, profit-sharing plans, credit balances on paid wages, security deposits, refunds, funds deposited to redeem stocks, bonds, coupons and other securities, or to make a distribution thereof, together with any interest or increment thereon. If desired, these specific items could readily be written into section 9 itself, thus perhaps adding to clarity and ready understanding of the coverage of the section, although necessarily at the expense of brevity.
[8A Uniform Laws Annotated 235, comment to § 9 (1966) (Master ed.1993).]
Under both the 1966 and 1954 formulations, the special dormancy period for property "held for the owner by [a public entity]" was identical: seven years. Id. at 233, § 8 (1966).
In the 1981 version, however, the periods became disparate, five years as the general rule and one year for the governmental exception, see 8B Uniform Laws Annotated 595 and 624, §§ 2 and 13 (1981) (Master ed.1993). The Commissioner's comment to § 2, the recodified provision that had previously been § 9, continued to classify that provision as "a general proposition" and as establishing "the general dormancy period[.]" Id. at 596, comment to § 2 (1981).
The dormancy periods in the Uniform Act, whether the general period or any of the exceptions, have been established with a view to providing the owners of unclaimed property with adequate time to claim it from the holders. In general, the five-year period is considered appropriate, subject to special considerations in specific instances. For example in addition to the governmental exception and others, the comment on § 4(a) of the 1981 Uniform Act notes that "[s]tatistical and economic evidence has shown that [the fifteen-year period for travelers checks and the seven-year period for money orders] continue to be appropriate." Id. at 603.
The inescapable conclusion is that the drafters considered, by category, each type of unclaimed asset and made appropriate and specific provision for it. Their selection of a one-year dormancy period for propertyincluding bond proceedsheld by public entities, and a five-year period for such property held by private entities, evinces a reflective and particularized choice. That understanding leads us to conclude that the trial court's construction, which classifies the proceeds of public agency bonds in the hands of a private entity as effectively "held" by the governmental unit which issued the bonds, to be strained and at variance with the manifest intent of the drafters and the plain language of the UUPA. Throughout the various versions of the uniform acts and New Jersey's enactments thereof, the use of the term "holder" has connoted the person or entity in whose possession the funds are at the time of escheat. Moreover, we see no basis in the language of the UUPA for classifying the proceeds of government bonds in the possession of a private-sector fiscal agent as trustee for the bondowners differently for dormancy-period purposes than the proceeds of bonds issued by private corporations.
Reversed.