## Estate of Henderson v. City of Philadelphia

*Alan E. Denenberg,* for plaintiffs.
*Alan C. Ostrow,* for defendants.

QUIÑONES ALEJANDRO, *J.,* November 9, 2001—

INTRODUCTION

The estate of Salim Henderson, incapacitated, and Donna Henderson in her own right, filed on July 24, 1998, a civil rights action in the United States District Court Eastern District of Pennsylvania against the City of Philadelphia, former Police Commissioner Richard Neal, Captain John Doe, Lieutenant John Doe, Sergeant John Doe, Police Officer John Doe no. 2, Police Officer Byron

Purnell Jr., and Police Officer Melanie Peoples-Barksdale, essentially alleging that because of inadequate training, the police officers violated Salim Henderson's substantive due process rights when they failed to prevent Henderson from jumping out of a window while at his home to effectuate his involuntary commitment.[1] By a 40-page memorandum and order dated July 9, 1999, the Honorable Judge William H. Yohn granted defendants' motion for summary judgment, dismissed plaintiffs' federal claims, and declined to exercise supplemental jurisdiction over plaintiffs' state claim for intentional infliction of emotional distress.[2]

On March 14, 2001, plaintiffs filed a praecipe to transfer their civil action from the federal court to the Philadelphia Court of Common Pleas, and also filed another similar complaint against the City of Philadelphia, Commissioner Richard Neal, Officer Melanie Peoples-Barksdale and Officer Byron Purnell Jr.[3]

On April 3, 2001, defendants filed preliminary objections claiming sovereign immunity on the basis of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§8541-64, averring that plaintiffs failed to articulate a claim for intentional infliction of emotional distress. On May 3, 2001, plaintiffs filed a response to defendants' preliminary objections. These preliminary objections and response were assigned to this motion judge, and by or-

---

1. United States District Court for the Eastern District of Pennsylvania No. 98-3861.

2. On May 2, 2000, the United States Court of Appeals for the Third Circuit affirmed Judge Yohn's order.

3. March term 2001, no. 1585.

der dated May 14, 2001, defendants' preliminary objections of plaintiffs' claim for intentional infliction of emotional distress against the individually-named defendants were overruled and it was noted that plaintiffs' claim for intentional infliction of emotional distress against defendant City of Philadelphia had been voluntarily withdrawn.

On June 11, 2001, defendants filed an application for an amendment to the May 14, 2001 order, pursuant to the provisions of 42 Pa.C.S. §702(b), interlocutory appeals by permission. On July 2, 2001, this motion judge granted the application and amended the May 14, 2001 order to include the following language: *that this matter involved a controlling question of law as to which there is a substantial ground for a difference of opinion and that an immediate appeal from the May 14, 2001 order may materially advance the ultimate termination of this matter.*

Thereafter, defendants filed the instant appeal and argued that this motion judge erred in overruling the individually-named defendants' preliminary objections to plaintiffs' claim of intentional infliction of emotional distress. This motion judge disagrees.

### RELEVANT FACTUAL AND PROCEDURAL HISTORY

This motion judge carefully reviewed the pleadings and exhibits filed in this matter, the memoranda submitted by counsel in support of the respective pleadings, and the federal judge's 40-page memorandum and order. The facts extracted from these documents are as follows:

"On the morning of July 29, 1996, Donna Henderson believed that her son, Salim Henderson, a diagnosed schizophrenic, was acting in such a way that he posed a danger to himself and, therefore, should be involuntarily committed to a mental health institution for treatment.[4] Donna Henderson obtained authorization from Misericordia Hospital in Philadelphia to have her son involuntarily committed, and completed the paperwork necessary to have the police transport him to the hospital. These papers, which the parties refer to as '302 papers' [5] indicated that Salim Henderson, a 20-year-old black male, had been discharged from another mental health facility in early July, but had not been taking his prescription medicine or keeping his appointments for continued treatment.

"After completing the necessary paperwork, Donna Henderson called 911 and requested police transport to Misericordia Hospital for her son. Defendant Officers Barksdale and Purnell arrived at the Henderson house at approximately 10:10 p.m., under the impression that they were to pick up a female who was voluntarily committing herself.

"The sequence and timing of events once the officers entered the Henderson home are disputed. Donna Henderson contends that when the police officers arrived,

---

4. Before July 1996, Henderson had been involuntarily committed six or seven times.

5. The papers are referred to as "302 papers" because the papers, containing the authorization of the county's mental health administrator, are required for an involuntary commitment under section 302 of Pennsylvania's Mental Health Procedures Act. See Pa. Stat. Ann., tit. 50, §7302 (West Supp. 1999).

they indicated to her that they were to take a female to the hospital. She advised the officers that she had called them and that the transport was for her *son,* and showed them the 302 papers she had obtained from Misericordia Hospital. While the police officers read the 302 papers, Donna Henderson contends that [Salim] Henderson came downstairs to where the officers were standing and sat near them on the sofa. Allegedly, Salim told his mother that he knew that she did not want him in the house but that he did not want to go to the hospital. Approximately two or three minutes after Salim had come downstairs, he told the police officers that he had 'to go upstairs for something.' The officers did not attempt to restrain Salim and allowed him to go upstairs. When he was out of ear-shot at the top of the stairs, Donna Henderson claims that she told the police officers that Salim might 'jump.' [6] Three to four minutes later, Donna Henderson contends that she heard a loud noise and ran up the stairs to discover that Salim had jumped out of a second-story window. This fall caused severe and permanent injuries."[7] Judge Yohn's memorandum and order dated July 9, 1999. (emphasis in original)

6. The police officers contend that Donna Henderson told them, in a strangely calm voice, that Henderson "is probably going to go out the window." Officer Purnell refutes that Donna Henderson said that Salim would "jump," and that he interpreted her comment to mean that he would try to escape. Officer Barksdale stated that she, also, did not interpret Donna Henderson's comment to mean that Henderson would jump.

7. The injuries included severe neurologic head injuries, dementia secondary to head trauma, traumatic brain injury, right hemiparesis and epidural hematoma of the brain and right side paralysis.

## ISSUE

In response to an order issued in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), defendants, on September 14, 2001, filed of record a statement of matters complained of on appeal and essentially argue that this motion judge erred as a matter of law when:

(1) the law of the case establishes that the plaintiff's actions were not foreseeable;

(2) the claim does not state a common-law cause of action;

(3) the claim fails to establish intentional infliction of severe emotional distress; and

(4) the claim does not meet the standard for willful misconduct under the Political Subdivision Tort Claims Act.

## LAW AND DISCUSSION

Title 42, section 702 of the Pennsylvania Consolidated Statutes Annotated allows interlocutory appeals by permission,

"When a court[,] . . . in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be

taken from such interlocutory order." 42 Pa.C.S. §702(b); *Commonwealth ex rel. Unified Judicial System v. Vartan,* 557 Pa. 390, 733 A.2d 1258 (1999); *Donnelly v. SEPTA,* 708 A.2d 145 (Pa. Commw. 1998).

As noted in the procedural recitation, defendants filed a motion to amend and certify the order dated May 14, 2001. By order dated July 3, 2001, this motion judge granted the request and included the certification language. It is possible that appellate opinion will place this matter in a different posture.

As for ruling on preliminary objections in the nature of a demurrer, such preliminary objections will be sustained where the contested pleading is legally insufficient. Pennsylvania Rules of Civil Procedure 1028(a)(4); *Cardenas v. Schober,* 2001 WL 988123 (Pa. Super. 2001), citing *Williams v. Nationwide Mutual Insurance Co.,* 750 A.2d 881 (Pa. Super. 2000). When considering such a preliminary objection, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa. Super. 2000), *app. granted,* 726 A.2d 985 (Pa. 2001).

In order to sustain a demurrer, it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. In other words, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Baily v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999).

Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings;[8] no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. *Cardenas, supra.* When reviewing an order sustaining preliminary objections in the nature of a demurrer, the appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are construed as true. *Constantino v. University of Pittsburgh,* 766 A.2d 1265 (Pa. Super. 2001).

Here, defendants' principal appellate issue is whether plaintiffs have established a claim for intentional infliction of emotional distress against the individual defendants. In their preliminary objections and appeal, defendants essentially argued that plaintiffs are barred from presenting their state claim of intentional infliction of emotional distress because Pennsylvania has not expressly adopted section 46 of the Restatement (Second) of Torts; and even if it had, plaintiffs are bound by the Third Circuit Court of Appeal's finding that Salim Henderson's suicide attempt was not foreseeable and, therefore, plaintiffs cannot go forward with this claim since it requires not only the element of foreseeability, but also intent; and finally, that this motion judge is bound by the federal court's findings. This motion judge, however, is of the opinion that defendants are incorrect in their arguments.

---

8. See Pa.R.C.P. 1019(g).

Although the tort of intentional infliction of emotional distress has not been formally adopted in the Commonwealth of Pennsylvania, the Pennsylvania Supreme Court has stated that "[w]hile our courts recognize a cause of action for intentional infliction of emotional distress, we have allowed recovery only in very egregious cases." [9] *Hoy v. Angelone,* 456 Pa. Super. 596, 610, 691 A.2d 476, 482 (1997), *aff'd and remanded on other grounds,* 554 Pa. 134, 720 A.2d 745 (1998).

The Commonwealth Court has also recognized the existence of such a claim:

"We also note that two reported decisions of this court have implied the existence of the tort. See *Carson v. City of Philadelphia,* 133 Pa. Commw. 74, 574 A.2d 1184 (1990); *Lancie v. Giles,* 132 Pa. Commw. 255, 572 A.2d 827 (1990) (en banc) (the latter remanding for further proceedings on plaintiff's intentional infliction of emotional distress claim). Accordingly, in the face of these precedents, this court concludes that the tort of intentional infliction of emotional distress is recognized by Pennsylvania courts." *McNeal v. City of Easton,* 143 Pa. Commw. 151, 156, 598 A.2d 638, 640 (1991). (footnote omitted)

There, the court likewise added in a footnote that employees of local agencies *enjoy no immunity* for their intentional torts. *Id.* at 156 n.1, 598 A.2d at 640 n.1, citing *Lancie, supra* (intentional infliction of emotional distress allegedly committed by police officers is not subject to governmental immunity).

---

9. See also, *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970) (concealing child's death and withholding body from parents).

Based on the above-cited case law, this motion judge opines that plaintiffs can bring a cause of action against defendants for intentional infliction of emotional distress. This tort encompasses that when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Hoy,* 720 A.2d at 753 (citing the Restatement (Second) of Torts §46). The court also stated the following:

"[C]ourts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven. Indeed our Superior Court has noted, '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' . . . Described another way, 'it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.' " *Id.,* 720 A.2d at 753-54. (citations omitted)

Simply stated, to prove a claim of intentional infliction of emotional distress, a plaintiff must establish that the conduct was extreme and outrageous; that it was intentional or reckless; that it caused emotional distress; and that distress was severe. *Hoy, supra* at 610, 691 A.2d at 482; *Hooten v. Penna. College of Optometry,* 601 F.

Supp. 1151, 1155 (E.D. Pa. 1984); section 46 of the Restatement (Second) of Torts. That is, a defendant's conduct must be such that recitation of the facts to an average member of the community would arouse resentment against the defendant and lead to an exclamation of "Outrageous!". Restatement (Second) of Torts §46(1) comment; *Paves v. Corson,* 765 A.2d 1128 (Pa. Super. 2000), *app. granted,* 779 A.2d 1142 (Pa. Super. 2001).

"Although the outrageousness of a defendant's conduct is ordinarily a question for the trier of fact, the court may decide as a preliminary matter whether defendant's conduct is sufficiently extreme to permit recovery." *Abdullah v. Philadelphia Housing Authority,* 2000 WL 377796, 7 (E.D. Pa. 2000). It is for the court to determine, in the first instance, whether the actor's alleged conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Hunger v. Grand Central Sanitation,* 447 Pa. Super. 575, 670 A.2d 173 (1996), *appeal denied,* 545 Pa. 664, 681 A.2d 178 (1996); *Reimer v. Tien,* 356 Pa. Super. 192, 514 A.2d 566 (1986).

Here, this motion judge opines that plaintiffs have averred sufficient facts in their complaint to establish a prima facie claim for intentional infliction of emotional distress against the individual defendants. Thus, this motion judge opines that the trier of facts should have the right to decide, ultimately, the issue at a trial.

As to defendants' claim that this motion judge is bound by the federal courts' finding, case law has held that when state courts entertain *federal causes of action,* the rights of, and the defenses to, a federal cause of action are defined by federal law so that the outcome of federal causes

of action would be the same, regardless if decided in a state or federal forum. *Chiropractic Nutritional Associates Inc. v. Empire Blue Cross and Blue Shield,* 447 Pa. Super. 436, 445, 669 A.2d 975, 979 (1995). Clearly, this case law only defines the state court's obligation when considering federal claims. It does not bind the state court in its determination of state law claims.

Instantly, the federal district court dealt only with plaintiffs' *federal* claims and declined to exercise supplemental jurisdiction over plaintiffs' state law claims of intentional infliction of emotional distress. Thus, this motion judge is not bound to adhere to any findings that may affect plaintiffs' state law claim.

As a final point in this analysis, defendants assert that this motion judge is bound to incorporate the federal appellate court's findings[10] that Henderson's suicide attempt was not foreseeable and, thus, plaintiffs are barred from bringing a claim for intentional infliction of emotional distress. Contrary to defendants' assertion, as defined, a claim for intentional infliction of emotional distress, in light of the criteria established by *Hoy, supra,* does not include elements of foreseeability.

Even if the tort required the element of foreseeability, here, it is possible to find that since the police officers were responding to a 302 *commitment* situation, they

---

10. Although the United States District Court found that Salim Henderson's actions were foreseeable, the United States Third Circuit Court of Appeals overruled that finding. This motion judge believes that Salim Henderson's behavior and the police officers' conduct should be evaluated by the trier of facts, and not disposed of by preliminary objections. Obviously, there is a difference of opinion.

should have been alerted to the need to properly and immediately restrain Salim Henderson to prevent him from harming himself. The nature of a 302 commitment is to facilitate an involuntary *emergency* examination and treatment procedure. *In re J.M.,* 556 Pa. 63, 726 A.2d 1041 (1999). To obtain 302 commitment papers, there must be either (1) certification of a physician stating the need for such examination; (2) a warrant issued by the county administrator authorizing such examination; or (3) no warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination. 50 Pa.C.S. §7302(a). As such, there must be a "clear and present danger" posed by the person sought to be committed. The application requires a person seeking involuntary commitment to indicate the nature of the "clear and present danger" posed by the person sought to be committed:

"Clear and present danger to himself shall be shown by establishing that within the past 30 days:

"□ (i) the person has acted in such a manner as to evidence that he or she would be unable, without care, supervision and the continued assistance of others, to satisfy his or her need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under the Act; or

"□ (ii) the person has attempted suicide and that there is a reasonable probability of suicide unless adequate

treatment is afforded under this Act. For the purpose of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or

"□ (iii) the person has substantially mutilated himself or herself or attempted to mutilate himself or herself substantially and that there is reasonable probability or [sic] mutilation unless adequate treatment is afforded under this Act. For the purpose of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation."

Donna Henderson checked the first box, then provided the following description of Salim Henderson's behavior as the basis for her belief:

"My son Salim Henderson has been throwing up out of his 2nd floor bedroom window. He is also peeing out the window. He overeats and then induces the vomiting. He was discharged from Chester Fairmount @ the beginning of July. He refuses to keep any appt. @ Horizon Hse. and he has been without medication since his discharge. He's smoking and leaves the cigars lit on paper towels, throws them around the house lit + smokes in bed also. He leaves the door to the outside open at night after we got [sic] to bed. If I ask him a question he turns around and says 'Who are you?—I don't know you.' He draws on the walls + then talks to the pictures he draws. He walks around the house naked."

The form was then completed by requesting that "[t]he county administrator issue a warrant authorizing a policeman or someone representing the county administrator to take the patient to a facility for examination and treatment."[11]

Thus, having expressed her belief that there was a "reasonable probability that death, serious bodily injury, or serious physical debilitation would ensue," it is plaintiffs' contention that once the police officers arrived and her son became aware of the reason for their presence, the officers should not have permitted Salim Henderson to go upstairs unsupervised, and that it was foreseeable that something tragic could happen. Plaintiffs further contend that the police officers had sufficient time to review the 302 commitment papers, and in spite of the statement that Salim Henderson was a danger to himself and was not taking his medications, they allowed him to be unsupervised. The actions on the part of the defendant officers can be viewed to comport with the Restatement's (Second) comment about knowledge of one's condition. Comment f. to the Restatement (Second) of Torts §46 states:

"The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reasons of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know . . . ."

---

11. See Third Circuit Court of Appeals opinion.

In their final appellate issue, defendants contend that this claim does not meet the standard of willful misconduct under the Political Subdivision Tort Claims Act. Case law provides that police officers' conduct is not protected by the Tort Claims Act if their conduct constitutes a crime, actual fraud, actual malice, or willful misconduct. *Schnupp v. Port Authority of Allegheny County,* 710 A.2d 1235 (Pa. Commw. 1998). Willful misconduct in this context is synonymous with "intentional tort." *Id.* "Willful misconduct" is not a deliberate indifference; it requires a desire to bring about the result or at least an *awareness that the result was substantially certain to follow. Owens v. City of Philadelphia,* 6 F. Supp.2d 373 (E.D. Pa. 1998).

Here, the evidence is undisputed that the police officers were responding to a request to transport a patient being considered for a 302 commitment. Despite this knowledge, the officers allowed Salim Henderson to go upstairs unsupervised. Under the circumstances it would appear that immunity cannot be extended to the officers to exempt them from plaintiffs' claims of intentional infliction of emotional distress. Based on the Mental Health Review Act and case law, this motion judge opines that the complaint establishes sufficient facts for a claim for intentional infliction of emotional distress, and which reasonable minds could assess as outrageous conduct on the part of defendants. It is this motion judge's belief that this matter should best be resolved by a trier of facts, and not by way of preliminary objections.

## CONCLUSION

For the foregoing reasons, this motion judge respectfully opines that there was no error in overruling the individual defendants' preliminary objections. This motion judge respectfully requests that this appeal be dismissed.